MAINE PEOPLE'S ALLIANCE and Natural Resources Defense Council, Inc., Plaintiffs

v.

HOLTRACHEM MANUFACTURING COMPANY, LLC and Mallinckrodt Inc., Defendants

No. CIV. 00–69–B–C.

United States District Court, D. Maine.

Nov. 25, 2003.

Mitchell S. Bernard, Nancy S. Marks, Corinne Schiff, Lawrence M. Levine, Natural Resources, Defense Council Inc., New York City, Philippe Z. Selendy, Boies, Schiller & Flexner, New York City, Robert M. Hayes, Eric Uhl, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, ME, Helen M. Maher, Boies, Schiller & Flexner, LLP, Armonk, NY, for Maine People's Alliance, Natural Resources Defense Council, Inc, Plaintiffs.

Daniel A. Pileggi, Roy, Beardsley, Williams & Granger, LLC, Ellsworth, ME, J. Andrew Schlickman, John M. Heyde, Susan V. Harris, James F. Warchall, Sidley, Austin, Brown & Wood, Chicago, IL, Steven J. Mogul, Gross, George Z. Singal, Gross, Minsky & Mogul, P.A., Bangor, ME, for Mallinckrodt Inc, Defendant.

IMPLEMENTING ORDER FOR PENOBSCOT RIVER STUDY PURSUANT TO MEMORANDUM OF DECISION AND ORDER DATED JULY 29, 2002

GENE CARTER, Senior District Judge.

WHEREAS the Court entered a Memorandum of Decision and Order dated July 29, 2002, ("Order") requiring that the parties confer and make good-faith efforts to

agree on a specific plan for an independent study as set forth hereinafter;

WHEREAS the Court has considered the parties' proposed plans and other materials submitted by the parties in support of them;

Now, therefore, the Court **ORDERS** as follows:

1. That a Study Plan sufficient to accomplish the objectives envisioned by the Court's Order, as specifically provided for in this Implementing Order, be developed and executed by the Study Panel and Consultant as provided for hereinbelow. The purposes of the Study Plan shall be to provide appropriate procedures and mechanisms to determine: (1) the extent of the existing harm *resulting from mercury contamination* to the Penobscot River/Bay system south of the Holtrachem plant site at Orrington, Maine ("the site"); (2) the need for and feasibility of a remediation plan to effectively address the present effects of such existing harm, if any; and (3) the elements of and timetable for the execution of the appropriate remediation plan to address the harm existing *as a result of mercury contamination.*

In carrying out its charge, the Study Panel shall address and answer the following questions:

(A) What physical, chemical, and biological processes are presently at work that effect or govern the distribution and fate of mercury and methyl mercury in the sediments and biota of the Penobscot River/Bay system south of the immediate area of the site?

(B) What is the extent to which any mercury in the Penobscot River/Bay system is being metholated and bioconcentrated and biomagnified in aquatic organisms and food webs of the Penobscot River/Bay system?

(C) Is any mercury in the Penobscot River/Bay system having significantly adverse effects on populations of organisms in the lower Penobscot River/Bay system?

(D) Is any mercury in the Penobscot River/Bay system posing an unacceptable risk to human health?

(E) Do the scientific data lead to the conclusion that a mercury remediation program is necessary and feasible to effectively remediate the effects of any such harm caused by mercury contamination in the Penobscot River/Bay system?

(F) If remediation is deemed necessary and feasible, what are the elements of and schedule required for the execution and completion of such a remediation program, addressing the effects of mercury contamination in the Penobscot River/Bay system, and what additional information is needed in order to design the remediation program?

The Study Panel shall determine the extent of the appropriate study area and may expand or contract the study area as it finds the data require or permit as the Study progresses.

2. On or before January 12, 2004, the Plaintiffs and the Defendants shall each nominate to the Court one member of a three-member panel (the "Study Panel") to advise the Court in connection with the design and implementation of the independent study of the Penobscot River/Bay system required by the Court's Memorandum of Decision and Order dated July 29, 2002 (the "Study"). No nominee shall have been previously retained, consulted, or employed in respect to any matter, litigation, subject, or endeavor by any of the parties to this proceeding or their predecessors in interest, unless the Court, after being fully advised by the parties of the circumstances

of any such connection, approves the nominee for appointment.

3. The said nominees, after approval by the Court, shall nominate to the Court a consultant ("Consultant") to assist in performing the Study and a third member of the Study Panel, who shall serve as the chairperson ("Chair") and presiding officer of the Study Panel. Neither the Consultant nor the Chair of the Study Panel shall have been previously retained, consulted, or employed in respect to any matter, litigation, subject, or endeavor by any of the parties to this litigation or their predecessors in interest unless the Court, after having been fully advised by the parties of the circumstances of such connection, approves them for appointment.

The Study Panel Members and the Consultant shall be approved and finally appointed by the written order of the Court before commencing their service. The Court shall fill any vacancy which may occur in either position after appropriate proceedings. In the event that the Study Panel Members appointed by the parties fail to agree on a Consultant and/or a third-member of the Study Panel by February 13, 2004, the Court shall, after appropriate proceedings, select the Consultant and/or third member of the Study Panel.

4. The Study Panel shall meet regularly in person and may conduct its business and communications with each other by electronic means when it is feasible and efficient to do so. The Study Panel shall act by consensus, if possible, and if not, by majority vote. Neither the Plaintiffs nor the Defendants nor any of their agents, servants, attorneys, or employees may have any *ex parte* communication with the Consultant or with any Study Panel Member regarding the substance of the Study without prior permission of the Court. Neither the Consultant nor Study Panel Members shall undertake to initiate or have any *ex parte* communication or contact with any party to this litigation or any of their agents, servants, attorneys, or employees without prior permission of the Court.

5. The Study Panel and the Consultant shall enter into a written agreement between them for the provision of services by the Consultant facilitating the conduct of the Study, which shall provide for the time periods for provision of such services and the compensation to be paid to the Consultant for such services, which written agreement shall be subject to the approval of the Court before it shall become effective. The action of the Consultant shall be subject to the approval of the Study Panel, which shall determine from time to time the extent, direction, and purpose of its activities in support of the work of the Study Panel.

The Study Panel shall perform a review and evaluation of the proposed Study Plans submitted to the Court by the parties pursuant to the Court's July 29, 2002, Order, as well as any additional materials regarding the scope, details, tasks, timing, costs, or budget of the Study that the parties or the Court may provide to the Study Panel. All materials to be provided to the Study Panel in this respect by any party shall be submitted to the Court as well. The Study Panel may seek out and consult other sources of information relevant to its undertaking as it sees fit to do so and shall have full access to the record of this case. By May 4, 2004, the Study Panel shall propose to the Court and the parties a Study Plan for Phase 1 ("Phase 1 Study Plan").[1] The Phase 1 Study Plan

---

1. The Phase 2 Study Plan will consist of any remediation program which the Court may order to be implemented after consideration of the Phase 1 Study Report.

shall include a schedule and proposed budget for its implementation. The Phase 1 Study Plan shall assess (i) whether mercury within the study site presently poses an unacceptable risk to human health and/or the environment; and (ii) answer the specific questions (A) through (E) set forth in paragraph 1 hereinabove. If the Study Panel is unable to agree on a Phase 1 Study Plan, budget, or schedule, the Study Panel Members shall individually submit their recommendations regarding an appropriate Phase 1 Study Plan to the Court and the parties. After appropriate proceedings, the Court will then determine the elements of a proper Phase 1 Study Plan by order of Court.

6. The Study Panel shall proceed to implement the Phase 1 Study Plan as approved by the Court in accordance with its terms, including its budget and schedule, utilizing, as it deems appropriate, the services of the Consultant and other scientists, technicians, and employees that it may employ with the prior approval of the Court.

7. The Study Panel shall submit a draft Phase 1 Study Report to the parties for review and comment for a period of no less than sixty (60) days after its submission. The parties may submit to the Study Panel comments on any such report, and the Study Panel shall consider such comments, revise the report as it finds to be appropriate in light thereof, and submit a Phase 1 Study Report to the Court, with a statement of reasons supporting the provisions of the report, for approval by the Court. The Court may conduct an evidentiary hearing on the issues raised by the Phase 1 Study Report and convene other proceedings as it deems necessary.

8. The Court will thereafter decide whether the Phase 2 work shall proceed upon the basis of the Phase I Study Report and the Court's findings of fact and conclusions of law based thereon and the record underlying the Study Report and will at that time determine the purposes and scope of the work to be required by the Phase 2 Study Plan.

9. The Court may at any time request the advice of the Study Panel on any matter within the scope of its undertaking. During the course of the study, the Consultant and the parties may request the Study Panel to recommend to the Court changes to the Study Plan, budget, or schedule, or the appropriate resolution of issues that arise during the conduct of the Study and, in response to any such request, the Study Panel shall make a recommendation to the Court. No significant changes to the Study Plan, budget, or schedule may be made without the approval of the Court. Any issue with respect to the Study Plan, budget, or schedule may be submitted by the parties and the Study Panel to the Court for decision, and the parties and the Study Panel shall have the opportunity to provide recommendations to the Court with respect to resolution of such issue, all to be in accordance with this Court's Procedural Order of even date herewith.

10. The Consultant, the members of the Study Panel, and any persons or entities employed by the Study Panel in the prosecution of its work, with the approval of the Court, shall be compensated by Defendant Mallinckrodt. Defendant Mallinckrodt shall establish an escrow account at an institution ("Escrow Agent") to be agreed upon by the parties and approved by the Court, and Defendant Mallinckrodt shall deposit such amounts to said account as shall be specified from time to time by Court order as the execution of the Study Plan progresses, complying at all times with the Court's schedule for the making of such deposits. The Court will set the amounts of such deposits as may be neces-

sary in order to provide funding for invoices received from the Consultant, the Study Panel Members, and for other necessary expenses of the Study as approved by the Court. The Court shall base the determination from time to time of such amounts on proposed budgets and invoice projections that the Study Panel shall provide to the Court periodically and upon the agreements of the parties and any other relevant information and factors. Such submissions shall be made on a quarterly basis or, at the Court's request, more frequently. Any disputes regarding funding or administration of the escrow account shall be resolved by the Court after appropriate proceedings.

11. The Study Panel Members shall be compensated periodically on a time and expense basis to be agreed upon and approved by the Court in advance of undertaking the Study Plan. Such agreement may, with the prior approval of the Court, be from time to time changed or amended as circumstances may require in the judgment of the Study Panel and the Court. Invoices for such compensation shall be submitted on a periodic basis to the Court and to the parties or as otherwise directed by Court order. Such invoices shall be paid from the escrow account upon approval by the Court. Defendant Mallinckrodt shall have ten (10) days from the submission of such invoices to file with the Court any objection it has to the amount of an invoice. Any such objection shall be promptly determined by the Court.

12. The Study Panel shall submit, every four (4) months, to the Court, with copies to the parties and the Consultant, a Status Report that will advise the Court of the status and progress of the Study Panel's undertaking as of the date of the Status Report.

13. The Court **RESERVES** and **RETAINS** jurisdiction over all aspects of the development and execution of the Study Plan pursuant to the Order and this Implementing Order to resolve all issues, questions, and controversies whatever between or among the parties, Study Panel Members, and Consultant which they cannot resolve among themselves by the application of a continuous, good-faith, and diligent application of their best efforts and energies to the expeditious accomplishment of the purposes of this Implementing Order, avoiding at all times needlessly burdening the Court with the resolution of esoteric issues and shall bring to the Court for its consideration only substantial issues of genuine significance *not amenable to the reasonable ministrations of the professional faculties of persons of reason and good intent*. The Court **FURTHER RESERVES** and **RETAINS** the authority to **AMEND** this Implementing Order from time to time as it sees fit.

So **ORDERED**.